GEORGE HIGGINSON & others *vs.* INHABITANTS OF NAHANT & others.

The selectmen of a town have authority to lay out a town way wholly upon land of citizens, against their consent, entering their land from a highway and returning to it at about the same place where it enters, and leading to no other way or landing-place, and capable of being used for no purposes of business or duty, or of access to the land of any other person; and which is laid out with the design to provide access not for the town merely, but for the public, to points or places in the lands of those citizens, esteemed as pleasing natural scenery.

The selectmen of a town may estimate the damages caused to the owner of land by the laying out of a town way at the same meeting at which the way is located.

BILL IN EQUITY against the inhabitants of Nahant and the selectmen thereof, to restrain them from constructing a way which had been laid out by the selectmen.

At the hearing in this court, before *Gray,* J., the plaintiffs offered to show that the way as located is wholly upon their lands and is bounded upon their lands on all sides except where it enters the same, that it leads to no other road or way or landing-place, public or private, and can be used for none of the purposes of business or duty, or of access to the land of any other person, but was laid out with a design to provide access, not for the town merely, but for the public, to points or places in the lands of the plaintiffs esteemed by the selectmen and those who applied to them to lay out the way, as pleasing natural scenery. This evidence was excluded.

The selectmen gave notice to the plaintiffs of the presentment to them of the petition for the laying out of the way, and of their intention to lay out the way, on a day and at a place named, when and where the plaintiffs were notified to be present, to show cause why the prayer of the petition should not be granted and the way be laid out. The plaintiffs appeared and, not asking to be then heard on the assessment of damages, or for any adjournment of the hearing, requested that they might be heard on that question after the selectmen should have fixed the line and boundaries of the way, in case they should lay out the same. The selectmen announced that then was the proper time for any hearing upon the question of damages; but this was not heard by the plaintiffs. The selectmen proceeded at the same meeting, after the close of the hearing and the departure of all parties, to lay out the way and assess damages.

The case was reserved for the determination of the whole court.

*S. Bartlett* and *H. W. Paine,* (*F. O. Prince* with them,) for the plaintiffs. The selectmen have no authority to lay out a way simply for pleasure. The property of individuals can only be appropriated to public uses when the public exigencies require it. Dec. of Rights, art. 10. So far as the legislation of the Commonwealth is concerned, there is nothing in its history which

even remotely suggests the thought that either highways or town ways are to be laid out for mere purposes of pleasure. And the settled course of decisions, which forbid expenditures by towns for merely patriotic purposes, shows that the powers of towns are generally restricted to what is necessary, as they are specially by *St.* 1785, *c.* 75, in the matter of town ways. See *Tash v. Adams,* 10 Cush. 252. *Walker* v. *Swasey,* 4 Allen, 527. An analogous question has been raised and the right to exercise the power denied in *Woodstock* v. *Gallup,* 28 Verm., 587. See also *Blodgett* v. *Boston,* 8 Allen, 237. The owners of property which is to be taxed for the construction of the way are also interested in this question. By what tenure is their property held, if it is liable to be taxed for laying out ways for the pleasure of the public at large? Where is the limit to the power to please the public? Is a man's estate to be taken away, as fast as objects of interest grow into being by the development of the surface or the bowels of the earth? How old shall such an object be? And is there any distinction between natural and artificial objects? If a man builds a Fonthill Abbey or a Chatsworth, may towns lay out a public way through his grounds to reach it? It is a power which ought not to be committed to the selectmen of towns, confirmed by a town-meeting, to determine what are objects so interesting and curious as to warrant the taking away or incumbering of the property of the citizen for the public advantage.

Notice should be given, before determining the damages. See Gen. Sts., *c.* 43, §§ 5, 6, 13, 14, 62; *Commonwealth* v. *Weiher,* 3 Met. 445; *Chase* v. *Hathaway,* 14 Mass. 222. [The argument as to the form of remedy is omitted.]

*W. C. Endicott,* for the defendants. The question of the necessity and convenience of a town way is exclusively for the selectmen and the town. *Monterey* v. *County Commissioners,* 7 Cush. 394. *Cragie* v. *Mellen,* 6 Mass. 7–15. *Walker* v. *Devereaux,* 4 Paige, 229, 250. *Champlin* v. *Mayor, &c. of New York,* 3 Paige, 573. *The King* v. *Mayor, &c. of London,* 3 B. & Ad., 271. A jury cannot revise their decision on this question. Gen. Sts. *c.* 43, §§ 20, 73. But the plaintiffs may, by

proper proceedings, obtain the judgment of the county commis-sioners. Gen. Sts. *c.* 43, § 70. What is public convenience or necessity is different in different places and at different times. It varies with the wants, location, condition, and pursuits of different communities. It is one thing in cities, and another in towns. The local tribunals are best able to determine what it requires, and with them the law places the decision. It is not for selectmen to inquire into the purpose of those who use a way, provided they travel on it. It is immaterial whether they are to pass over it for business or pleasure. But if there is a great amount of travel to any natural object of interest, the selectmen may legally lay out a way to reach it, if they find that a necessity arises.

The notice was sufficient. Gen. Sts. *c.* 43, §§ 3–7, 61–64. *Brown* v. *County Commissioners,* 11 Met. 210. *Inhabitants of New Salem, petitioners,* 6 Pick. 470. *Jones* v. *Andover,* 9 Pick. 146.

Hoar, J. There are three principal questions presented for adjudication upon this report; the first two requiring a decision of the rights of the plaintiffs, and the third concerning only the remedy.

The first and most important of these is whether, when a town way has been laid out by the selectmen of a town with all the forms prescribed by the statutes of the Commonwealth, and has been duly accepted by the town, it is competent, in order to impeach the validity of these proceedings, to show that the way is wholly on the land of the plaintiffs; that it enters their land from a highway and returns to it at about the same place where it enters; that it leads to no other way or landing-place, and can be used for no purposes of business or duty, or of access to the lands of any other person; but that it was laid out by the selectmen with the design to provide access, not for the town merely, but for the public, to points or places in the lands of the plaintiffs, esteemed by the selectmen, and those who applied to them to lay out the way, as pleasing natural scenery. It is certainly no objection to a town way that it will be serviceable not only to the inhabitants of the town, but also to the public generally.

Though it is laid out by the officers and constructed and paid for by the inhabitants of the town, all persons have an equal right to use it after it is completed. *Cragie* v. *Mellen*, 6 Mass. 7 *Monterey* v. *County Commissioners*, 7 Cush. 394.

But the position of the plaintiffs is, that in the case presented the way is not intended for the legitimate purposes of a way; that the pretence of laying it out as such is merely colorable ; and that private property cannot be lawfully taken and appropriated to such a use.

It has been held that, in laying out a town way, a formal adjudication that the public convenience and necessity require it is not made essential to its legality. *Jones* v. *Andover*, 9 Pick. 154. The reason of this seems to be that the inhabitants of the town, who constitute the public for whose use and advantage the way is principally designed, and who are to bear the expense of constructing it, are to decide by their vote whether it shall be established. The particular community whose convenience is to be consulted determine the matter for themselves. That the town want the road is best settled by the town's voting to have it and pay for it.

But yet the statutes authorizing the laying out of town ways undoubtedly imply the exercise of an independent judgment by the selectmen that the way is needed. A way laid out by them in pursuance of instructions by the town is not warranted by law. *Kean* v. *Stetson*, 5 Pick. 492. *State* v. *Newmarket*, 20 N. H. 519. And the purpose for which the way is laid out may be inquired into, in order to show that it was illegal. Thus it has been decided in New Hampshire that where the object of a town way was merely to avoid a toll-gate upon a turnpike it could not awfully be made, the reason being that it was an invasion of an existing franchise. *Turnpike Co.* v. *Champney*, 2 N. H. 199. And see *West Boston Bridge* v. *County Commissioners*, 10 Pick. 270. And in *Woodstock* v. *Gallup*, 28 Verm., 587, it was said by the court that, while ornament and the improvement of the grounds about a public building might well be taken into consideration and regarded in connection with the convenience and necessity of a proposed highway, they do not alone constitute

a sufficient basis for establishing it. The doctrine that public ways are for travel, and not for places of amusement, has also been recognized in this commonwealth. *Blodgett* v. *Boston*, 8 Allen, 237.

But we are not aware of any case in which it has been ever held that, where there is an amount of travel sufficient to warrant the construction of a road which permanently seeks a particular avenue, the purpose for which the public want to travel is to be regarded, if the purpose is lawful. The plaintiffs have contended that the purpose for which a road is wanted must be a purpose of business or duty, in order to create a public exigency. But we think it impossible to go into such refinements. Nahant itself is a town which owes much of its population to its attractiveness for other purposes than business or profit. The passing from place to place is a rightful object of public provision in itself; and the occasions for it are as extensive as the pursuits of life. Pleasure travel may be accommodated as well as business travel. The security against an unreasonable inva‹ sion of private rights of property in establishing town ways unnecessarily is to be found, first, in the sense of justice and duty of the board of selectmen; secondly, in the improbability that the inhabitants of a town, with full opportunity for discussion and remonstrance, will vote to accept and construct a way which is not needed, and impose upon themselves the burden of construct‹ ing and maintaining it, as well as the damages to the land-owners whose property is taken; and, thirdly, in the power to apply to the county commissioners for the discontinuance of the way, if the town refuse to discontinue it. But selectmen may lay out and towns may establish such ways as they think necessary for any of the lawful purposes of travel. In *Blodgett* v. *Boston*, before cited, the Chief Justice uses this language in reference to the obligation of a town to the keep a way in repair: " The word ' travellers ' may well embrace within its meaning, as applied to the subject matter every one, whatever may be his age or condition, who has occasion to pass over the highway for any purpose of business, convenience or pleasure. Nor is the motive or object with which a street or way is thus used, if it be not

unlawful, at all material in determining whether a person is entitled to an indemnity from a city or town for an injury occasioned by a defect. The highway is to be kept safe and convenient for all persons having occasion to pass over it, while engaged in any of the pursuits or duties of life." And it would seem that roads may be established for the purposes for which they are afterward to be kept in repair. We think, therefore, that the only true test is whether a road is wanted for public travel; which, in the case of town ways, is to be decided by the inhabitants of the town; and that we cannot go into a consideration of the reasons which may induce people to wish to travel upon it, if the travel is for an innocent and lawful purpose.

If the doctrine for which the plaintiffs contend were supported, a road to the top of Mount Washington, to Niagara or Trenton Falls, to the Mammoth Cave of Kentucky, or the Natural Bridge in Virginia, or even to a public park or common in the cities, would not come within the powers of the officers intrusted with the duty of laying out ways. It would also follow that the legislature would not have the constitutional right to take private property for a public park or pleasure ground, making full compensation to the owner — a conclusion which we should hesitate to arrive at without much farther consideration, in view of the important relations which air, exercise and recreation bear to the general health and welfare of the community.

Nor is it to be forgotten that, while sufficient public ways are a protection against trespasses upon private property, there may be some reason to expect that a way furnishing access to " pleasing natural scenery" will lead to settlement and habitation, and that, in the plan of a town, it may be well to make some prospective provision for probable future wants of the inhabitants in this respect.

The second objection to the validity of the proceedings is on account of the alleged want of notice to the plaintiffs after the selectmen had proceeded to lay out the way, and before the assessment of damages. They contend that after the way had been laid out, and its width, grade and exact location had been determined, they were entitled to a new notice of a hearing on

the question of damages. The argument is mainly founded upon the language of Gen. Sts. *c.* 43, § 62, which provide that the damages occasioned by the laying out of a town way shall be assessed by the selectmen " in the manner provided for the assessment and award of damages by county commissioners in laying out highways." We think this phraseology has reference to the nature of the damages, the deductions to be made for benefits, and the distribution of damages among different parties in interest. But giving it the fullest meaning of which it is capable, it would not support the claim of the plaintiffs. In laying out highways, there are, it is true, two meetings of the commissioners required by law; and parties interested are to be notified of each of them. But the first meeting is for the purpose of deciding upon the convenience and necessity of the way prayed for between the *termini* named in the petition. When this is determined, another meeting is to be held for the purpose of making the location, of which due notice must be given. Gen. Sts. *c.* 43, § 6. At this meeting the precise location of the way, its grade, width, &c., are first conclusively established, and the damages occasioned by its location are estimated and awarded. The land-owners whose property is taken or injured have precisely the same difficulty as in the case at bar. They must prove their damages at the same meeting at which they learn for the first time exactly how the way will affect them.

The first meeting, to decide upon the convenience and necessity of the proposed way, is not required in the case of town ways, but remains to be settled by the vote of the town. In other respects the owners of property stand exactly as they do in the case of highways.

The rights of the plaintiffs not appearing to have been infringed in any particular, it becomes unnecessary to consider the question which has been argued relating to the form of remedy, and the bill must be *Dismissed with costs.*